# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) |
|  | ) |
|  | ) |
| Application of Storag Etzel GmbH for an | ) **Case No.** |
| Order, Pursuant to 28 U.S.C. § 1782, to Obtain | ) |
| Discovery for Use in a Foreign Proceeding | ) |
|  | ) |
|  | ) **CONFIDENTIAL** |
|  | ) **FILED UNDER SEAL** |
|  | ) |
|  | ) |
|  | ) |

## APPLICANT STORAG ETZEL GMBH'S
## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS
## *EX PARTE* APPLICATION FOR AN ORDER, PURSUANT TO 28 U.S.C. § 1782,
## TO OBTAIN DISCOVERY FOR USE IN A FOREIGN PROCEEDING

**LANDIS RATH & COBB LLP**
Rebecca L. Butcher (No. 3816)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, DE 19801
Telephone: (302) 467-4400
Facsimile:  (302) 467-4450
Email: butcher@lrclaw.com
       pierce@lrclaw.com

**FRESHFIELDS BRUCKHAUS DERINGER US LLP**
Timothy P. Harkness
Olivia P. Greene
601 Lexington Avenue, 31st Floor
New York, New York 10022
Telephone: (212) 277-4000
Facsimile: (212) 277-4001
Email: timothy.harkness@freshfields.com
       olivia.greene@freshfields.com

Dated: August 27, 2019

W0057435

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................ 1

FACTUAL BACKGROUND ............................................................................... 4

    A.    **The Parties** ............................................................................................ 4
    B.    **The Cause Of The Damages Applicant Claims** ................................. 4
    C.    **The Award And Applicant's Effort To Enforce It** ............................ 5

ARGUMENT ................................................................................................... 10

    A.    **The Application Meets The Statutory Requirements** ...................... 12

        1.    Applicant Is An "Interested Person" ......................................... 12

        2.    The Evidence Is For Use In A Foreign Proceeding ................... 12

        3.    The Subject Of Discovery "Resides" In The District Of Delaware .......... 14

    B.    **All Of The *Intel* Discretionary Factors Favor Granting This Application** ............................................................................................ 15

        1.    The Arbitral Tribunal May Not Compel Discovery From Respondent ..................................................................... 15

        2.    The Arbitral Tribunal Is Not Hostile To This Application ....... 17

        3.    The Application Has Not Been Filed To Circumvent Any Law Or Rule ......................................................................... 18

        4.    The Discovery Requests Are Not Unduly Intrusive Or Burdensome ....... 19

    C.    **This Court Can And Should Order Respondent To Preserve Evidence Pending Compliance With An Order Pursuant To Section 1782** ........................................................................................ 19

CONCLUSION ................................................................................................ 20

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Application Of Consorcio Ecuatoriano de Telecomunicactiones S.A. v. JAS
    Forwarding (USA) Inc.*,
    747 F.3d. 1262 (11th Cir. 2014) ........................................................................... 10

*Bayer AG v. Betachem, Inc.*,
    173 F.3d 188 (3d Cir. 1999) ................................................................................. 10

*Comision Ejecutiva, Hidroelectrica del Rio Lempa v. Nejapa Power Co.*,
    2008 WL 4809035 (D. Del. Oct. 14, 2008) .............................................. 1, 13, 14

*El Paso Corp. v. La Comision Ejecutiva Hidroelectrica Del Rio Lempa*,
    341 F. App'x 31, 33-34 (5th Cir. 2009) ................................................................ 14

*Euromepa S.A. v. R. Esmerian, Inc.*,
    51 F.3d 1095, 1100 (2d Cir. 1995) ....................................................................... 18

*In re Application of Gemeinschaftspraxis Dr. Med Schottdorf*,
    2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006) ...................................................... 15

*In re Application of Gilead Pharmasset LLC*,
    2015 WL 1903957 (D. Del. Apr. 14, 2015) .......................................................... 15

*In re Application of Imanagement Servs. Ltd.*,
    2006 WL 547949 (D.N.J. Mar. 3, 2006) ............................................................... 14

*In re Application of Reliance Flag Telecom Ireland Ltd and Reliance Globalcom Ltd.*,
    No. 18-mc-00179 (D. Del. Jun. 14, 2018), D.I. No. 5 ...................................... 1, 15

*In re the Application of Sauren Fonds-Select SICAV v. For Discovery Pursuant to 28
    U.S.C. § 1782*,
    2016 WL 6304438 (D.N.J. Oct. 26, 2016) ....................................... 13, 15, 16, 17

*In Re: Application of Stadtwerke Frankfurt Am Main Holding GmbH*,
    No. 19-mc-00001 (S.D. Ga. Feb. 27, 2019), Order, D.I. No. 3 ............................ 13

*In re Application of Stadtwerke Frankfurt Am Main Holding GmbH*,
    No. 19-mc-00035(JMF) (S.D.N.Y. Jan. 31, 2019), Order, D.I. No. 8 .................. 13

*In re Bayer AG*,
    146 F.3d 188 (3d Cir. 1998) ................................................................................. 10

*In re Biomet Orthopaedics Switzerland GmBh*,
    742 F. App'x 690 (3d Cir. 2018) .......................................................................... 12

*In re Cal. State Teachers' Ret. Sys.*,
    2016 U.S. Dist. LEXIS 179897 (D.N.J. Dec. 28, 2016) ........................ 15

*In re Cal. State Teachers' Ret. Sys.*,
    2017 WL 1246349 (D.N.J. Apr. 3, 2017) ................................. 17, 18, 20

*In re Chevron Corp.*,
    633 F.3d 153 (3d Cir. 2011) ........................................................ 16

*In re Eurasian Natural Resources Corp.*,
    2018 WL 1557167 (N.D. Cal. Mar. 30, 2018) ............................... 20

*In re Ex Parte Motorola Mobility, LLC*,
    2012 WL 4936609 (N.D. Cal. Oct. 17, 2012) ............................... 19

*In re Gushlak*,
    2011 WL 3651268 (E.D.N.Y. Aug. 17, 2011) ............................... 18

*In re IPCom*,
    2014 WL 12772090 (N.D. Cal. Apr. 10, 2014) ............................. 19

*In re Klein-Bentsur*,
    2019 U.S. Dist. LEXIS 25472 (D.N.J. Feb. 15, 2019) .................... 19

*In re Machida*,
    2015 WL 12830388 (C.D. Cal. Nov. 3, 2015) ............................... 20

*In re Mesa Power Grp., LLC*,
    2012 U.S. Dist. LEXIS 179870 (D.N.J. Nov. 20, 2012) ................... 1

*In re O'Keeffe*,
    2015 U.S. Dist. LEXIS 16000 (D.N.J. Feb. 10, 2015) .................... 14

*In re Roz Trading Ltd.*,
    469 F. Supp. 2d 1221 (N.D. Ga. 2006) ...................................... 13

*In re Varian Med. Sys. Int'l AG*,
    2016 U.S. Dist. LEXIS 38911 (N.D. Cal. Mar. 24, 2016) ............... 18

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004) ............................................................ *passim*

*John Deere Ltd. v. Sperry Corp.*,
    754 F.2d 132 (3d Cir. 1985) ...................................................... 12

*Kulzer v. Esschem*,
    390 F. App'x 88 (3d Cir. 2010) ..................................... 12, 14, 17, 18

*Mees v. Buiter*
    793 F.3d 291 (2d Cir. 2015) ...................................................................... 14

*Pinchuk v. Chemstar Products LLC,*
    2014 WL 2990416 (D. Del. Jun. 26, 2014)....................................................... 18, 20

*Republic of Kazakhstan v. Biedermann Int'l,*
    168 F.3d 880 (5th Cir. 1999)....................................................................... 14

*TRIUVA Kapitalverwaltungsgesellschaft mbH v. Baker Hughes, a GE Company, LLC, et al.,*
    No. 4:15-cv-02744 (S.D. Tex. filed Sept. 21, 2015) ............................................. 7

**Statutes**

28 U.S.C. § 1782 ............................................................................... *passim*

## PRELIMINARY STATEMENT

Storag Etzel GmbH ("Applicant") seeks discovery from Baker Hughes, a GE Company, LLC ("Respondent") of documents and information that are highly-relevant to its claims in a foreign proceeding, pursuant to 28 U.S.C. § 1782 ("Section 1782"). Respondent is incorporated in this district and is the parent of Applicant's adversary in the foreign proceeding, but is not a party to that proceeding and cannot be ordered to provide discovery therein. In a previous arbitration between the parties to the foreign proceeding, Applicant's adversary avoided the disclosure of important documents by maintaining they were held by Respondent in the US. Therefore, Applicant respectfully requests this Court issue an *ex parte* Order, pursuant to Section 1782, directing Respondent to provide narrowly-defined and highly-relevant discovery that will aid Applicant's pursuit of its claims in the foreign proceeding.[1]

On March 11, 2019, Applicant initiated an arbitration pending in Germany (the "Arbitration"), conducted under the auspices of the German Arbitration Institute ("DIS"),[2] against Baker Hughes (Deutschland) GmbH ("Baker Hughes Germany").[3] Applicant's claims in

---

[1] An *ex parte* application pursuant to Section 1782 is appropriate and is the typical procedure when invoking this statute. *See, e.g., Comisión Ejecutiva, Hidroeléctrica del Rio Lempa v. Nejapa Power Co.*, 2008 WL 4809035, at *1 (D. Del. Oct. 14, 2008) ("Section 1782 does not expressly require that notice be provided to the party from whom discovery is being sought."); *In re Mesa Power Grp., LLC*, 2012 U.S. Dist. LEXIS 179870, at *9 (D.N.J. Nov. 20, 2012) ("Applications pursuant to [Section] 1782 are frequently granted *ex parte* where the application is for the issuance of subpoenas.") (quotations omitted); *see also In re Application of Reliance Flag Telecom Ireland Ltd. and Reliance Globalcom Ltd.*, No. 18-mc-00179 (D. Del. Jun. 14, 2018), D.I. No. 5, at 1 (granting *ex parte* application for discovery for use in a foreign arbitration) (attached as Exhibit C to the Declaration of Timothy P. Harkness, dated August 26, 2019 (the "Harkness Declaration" or "Harkness Decl."), filed contemporaneously herewith).

[2] DIS is the acronym for the German Arbitration Institute in its native German, "Deutsche Institution für Schiedsgerichtsbarkeit."

[3] The DIS Rules impose strict confidentiality obligations preventing disclosure of, among other things, the existence of the arbitration, the identity of parties, and the details of the claims. The specific details of the arbitration proceedings, the parties, and the defects in

the Arbitration concern the quantification of the damages that Baker Hughes Germany is required to pay Applicant pursuant to a June 7, 2018 arbitral award (the "Award") providing, *inter alia*, a declaration that Baker Hughes Germany compensate Applicant for all costs arising from a defect in the equipment it supplied to Applicant.

Respondent designed and manufactured the defective equipment, which Baker Hughes Germany sold to Applicant. Baker Hughes Germany installed the defective equipment in 30 underground gas storage caverns developed and operated by Applicant. Each cavern is approximately the size of the Empire State Building and is filled with large volumes of natural gas under high pressure. The defect in the equipment ultimately caused extensive damage in two of the caverns, necessitating not only the repair of these two caverns but also the replacement of the defective equipment in the 28 other caverns. Applicant brought the arbitration underlying the Award to enforce its contractual rights against Baker Hughes Germany. The Award found Baker Hughes Germany liable for the serial defect and ordered it to compensate Applicant for all costs arising from the defective equipment in the non-damaged caverns, among other relief, but Baker Hughes Germany has refused to pay these costs. Baker Hughes Germany argues that temporary emergency safety features installed in these caverns constitute a permanent repair of the defect and that it is not otherwise obligated to further compensate Applicant under the Award. Despite the ruptures of its equipment and the Award confirming a serial defect, Baker Hughes still does not appear to have warned its customers of the risks of its safety relevant products.

---

the equipment supplied to Applicant by Baker Hughes Germany, are set forth in the accompanying Declaration in Support of the Application by Dr. Daniel Schnabl, dated August 26, 2019 (the "Declaration" or "Decl."), filed contemporaneously herewith. In view of the obligations of confidence imposed by the DIS Rules, Applicant submitted with its Application a motion seeking permission to file the motion itself and the Declaration under seal and to file redacted copies of the Application, the Proposed Section 1782 Discovery Order, this Memorandum of Points and Authorities, the Harkness Declaration, and exhibits thereto, on the public docket.

Accordingly, the central issues in the Arbitration concern what repairs are necessary to remedy the defect, the cost of those repairs, and whether Baker Hughes Germany has any basis for limiting the amount of compensation it owes Applicant under the Award.  As Respondent designed and manufactured the defective equipment in the US, it has discoverable information in its possession, custody and control of direct relevance to the central issues in the Arbitration. Because Respondent is not a party to the Arbitration, and is outside the jurisdiction of a German arbitral tribunal, Applicant brings this Application, pursuant to Section 1782, seeking discovery concerning: (1) Respondent's assessment of the repairs necessary to remedy the defect and the costs of those repairs; and (2) whether Respondent and/or Baker Hughes Germany knew that the subject equipment was defective, a question that will determine whether Baker Hughes Germany can limit the amount of compensation it owes Applicant, as it alleges in the Arbitration.  As set forth below, this information is properly subject to discovery pursuant to Section 1782.

*First*, this Application satisfies the statutory requirements for discovery under Section 1782. Applicant is an "interested person" because it is a party to the Arbitration. Respondent is incorporated in Delaware and thus "resides" in this District for the purposes of Section 1782. And the requested discovery is for use in the Arbitration, which is a foreign "proceeding" within the meaning of Section 1782.

*Second*, the four discretionary factors articulated by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004) favor granting the requested discovery.  Specifically: (1) Respondent is not a party to the Arbitration and therefore is not subject to the arbitral tribunal's jurisdiction, (2) German courts and tribunals are generally receptive to evidence obtained by Section 1782 requests such as this one, (3) the discovery sought is directly relevant to several of the core issues in dispute in the Arbitration and the

Application does not contravene any applicable laws or rules, and (4) this Application is narrowly tailored and seeks only a small number of clearly identified categories of discovery controlled by Respondent.

*Third*, granting this Application will foster Section 1782's twin aims of providing efficient assistance to participants in international proceedings and encouraging foreign countries to similarly assist our courts.

## FACTUAL BACKGROUND

### A.    The Parties

Applicant is a German limited liability company (GmbH) that develops, operates, maintains and markets man-made natural gas storage caverns located in underground salt formations in Etzel, Germany.  Decl. ¶ 4.

Respondent is a limited liability company organized under the laws of the State of Delaware.  It markets itself as "the industry's only fullstream oilfield services company with an offering that spans the entire oil and gas value chain."[4]  Respondent was formed in 2017, following the merger of Baker Hughes Inc. with General Electric's oil and gas business.[5]  Baker Hughes Germany is the named respondent in the Arbitration pending in Germany and is a wholly-owned subsidiary of Respondent.  *Id.* at ¶ 6.

### B.    The Cause Of The Damages Applicant Claims

Applicant develops and operates natural gas storage caverns located within salt formations over 1,000 meters below ground.  Decl. ¶ 4.  The equipment used in the caverns includes a component called the "sub-surface safety valve" ("SSSV"), which is welded into its place.  *Id.* at 12-13.  Beginning in 2008, Applicant contracted with Baker Hughes Germany for

---

[4]    Baker Hughes, a GE Company, LLC, Fiscal Year 2018 Form 10-K, 2 ("Form 10-K").

[5]    *Id.* The acts of Baker Hughes Inc. will be referred to herein as the acts of Respondent.

the supply of SSSVs, and Baker Hughes Germany installed 30 of these SSSVs in 30 gas storage caverns operated by Applicant (the "Caverns"). Decl. ¶¶ 12, 29. The SSSVs that Baker Hughes Germany supplied to Applicant were designed and manufactured by Respondent. *Id.* at ¶ 19.

In 2014, two of the SSSVs installed in the Caverns ruptured. Decl. ¶ 13. The Award determined that they were caused by intergranular corrosion, which was due to a defect in the SSSVs supplied by Baker Hughes Germany. *Id.* at ¶ 15. Namely, the SSSVs were manufactured using a type of stainless steel called "AISI420mod"[6] that is prone to sensitization when welded. *Id.* at ¶ 15. The sensitization in turn renders the SSSVs susceptible to intergranular corrosion when welded. *Id.* Thus, the first arbitral tribunal determined that the welded AISI420mod material used in the SSSVs was the cause of the ruptures. *See id.* at ¶¶ 15-16. Further, because all of the SSSVs supplied to Applicant were comprised of AISI420mod, the remaining 28 caverns in which the SSSVs had been installed were at risk of sustaining damage from intergranular corrosion. *See id.* at ¶ 15. As a result of the defect in the SSSVs, Applicant undertook extensive repairs to the two caverns with ruptured SSSVs, including the removal of the defective SSSVs. Decl. ¶ 18. In addition, Applicant had to install temporary safety features called "Straddles" to prevent further uncontrolled ruptures in the other 28 caverns with defective SSSVs. Decl. ¶ 21.

## C.   The Award And Applicant's Effort To Enforce It

Following the ruptures in two of the caverns, Applicant instituted an arbitration against Baker Hughes Germany in which it brought German law contract claims regarding the defective

---

[6]      AISI420mod is a 13 percent chrome steel, which is also referred to, *inter alia*, as "13Cr Steel," "420mod SS," "420mod Stainless Steel," "X40CrMoVN16-2," "AISI 420," "420 SS," "420 Stainless Steel," and "X20Cr13."

SSSVs.[7]  Decl. ¶ 13.  This first arbitration resulted in the Award in Applicant's favor.  *Id.*  The Award held that all SSSVs supplied by Baker Hughes Germany to Applicant were defective because they lacked corrosion resistance and held that this defect was the cause of the two ruptures and related damage to the affected caverns.  *Id.* at ¶¶ 15-16.  The Award issued declaratory relief, holding that Baker Hughes Germany must compensate Applicant for all costs arising from the defect—*i.e.*, the lack of corrosion resistance—in the SSSVs.  *Id.* at 17.

Baker Hughes Germany has refused to compensate Applicant for the costs of actually repairing the 28 caverns that have not yet ruptured but contain defective SSSVs.  Decl. ¶ 18.  To enforce the Award and its rights under German law, Applicant brought the Arbitration currently pending against Baker Hughes Germany, seeking €142 million in damages, *inter alia*, for the costs of removing and replacing the defective SSSVs in the remaining 28 caverns.  *Id.* at ¶¶ 18, 23.  On March 12, 2019, the DIS confirmed that the proceedings had been properly commenced and assigned the proceedings the reference number "DIS-SV-2019-00183."  *Id.* at ¶ 9.  Baker Hughes Germany has submitted a statement of defense.  *Id.* at ¶ 11.

---

[7]   In a separate proceeding, to which neither Applicant nor Baker Hughes Germany were parties, the beneficial owner of the Caverns then TRIUVA Kapitalverwaltungsgesellschaft mbH (now called PATRIZIA Frankfurt Kapitalverwaltungsgesellschaft mbH) brought products liability and negligence claims under US law against Respondent in the Southern District of Texas (the "Texas Action"). *See TRIUVA Kapitalverwaltungsgesellschaft mbH v. Baker Hughes, a GE Company, LLC, et al,* No. 4:15-cv-02744 (S.D. Tex. filed Sept. 21, 2015). Those claims have since been assigned to IVG Immobilien GmbH, who subsequently replaced the original plaintiff. Just as Applicant is not a party to the Texas Action, IVG Immobilien GmbH is not a party to the Arbitration. Thus, the Texas Action is entirely separate from this Application, and concerns different claims, brought by a different party (represented by a different law firm), that are not—and cannot be—the subject of the Arbitration. Due to his role as the lead German arbitration counsel to Applicant, Dr. Daniel Schnabl, who provided the Declaration in Support of the Application filed contemporaneously herewith, also appeared on a couple occasions in hearings for the Texas Action to answer any questions that the Judge may have regarding the first arbitration.

## REQUESTED DISCOVERY

Respondent designed and manufactured in the US the defective SSSVs that Baker Hughes Germany supplied to Applicant. Decl. ¶ 19.  Based on Respondent's role in the design and manufacture of the SSSVs, Applicant seeks the following categories of discovery that are highly relevant to central issues in dispute in the Arbitration, and which Applicant expects that Respondent will have within its possession, custody, and control.  *See* Harkness Decl., Exhibit A.

*Documents showing Respondent's assessments of the costs of fully repairing the defective SSSVs.*  In the first arbitration, one of Baker Hughes Germany's witnesses testified that the costs caused by defective subsurface equipment can exceed €1 billion.  Decl. ¶ 23.  Given this testimony and Respondent's role in designing and manufacturing the SSSVs, Applicant expects that Respondent holds documents assessing the financial consequences, in particular the costs of fully repairing the Caverns with defective SSSVs, documents that Applicant can use to confirm its own calculation of repair costs underlying its specific claim for damages of €142 million.

*Documents showing Respondent's assessments of the technical effect of the Straddles installed in the remaining 28 caverns to prevent damage to those caverns.*  Baker Hughes Germany has asserted that the temporary safety features—the Straddles—installed in the 28 caverns that have not ruptured yet remedies the defect in the SSSVs.  Decl. ¶ 21.  Thus, Baker Hughes Germany claims it has no other obligations to compensate Applicant for the costs of remedying these SSSVs.  *Id.*  However, even though the Straddles had already been installed, the Award declared that Baker Hughes Germany must compensate Applicant for "*all* damages that are caused to it with respect to . . . the lack of resistance to corrosion of the material AISI420mod," indicating that the arbitral tribunal understood the 28 caverns had not yet been repaired.  Decl., Ex. C, ¶ 921 (emphasis added).  Further, an email among individuals at Baker

Hughes and Baker Hughes Germany supports Applicant's position that the Straddles were intended to be a "temporary solution." *See* Decl., Ex. D.   Applicant believes Respondent has additional documents concerning its technical assessments of the Straddles that could confirm Applicant's claims that the Straddles do not constitute permanent repairs.

*Documents showing Respondent's and/or Baker Hughes Germany's knowledge of the risk of intergranular corrosion.*   By 2008, when Applicant began contracting with Baker Hughes Germany for the supply of SSSVs, Baker Hughes Germany knew or should have known that welded AISI420mod was unsuitable for use in the Caverns because it is prone to sensitization that renders it susceptible to intergranular corrosion.   Decl. ¶¶ 28, 30.   A 2002 internal Baker Hughes Material Specification for AISI420mod warns that there are risks associated with exposing AISI420mod to high temperatures within the range that occurs during welding.   *See* Decl., Ex. E, ¶ 4.2.3.   Further, a 2011 internal email from a Baker Hughes employee specifically discusses the risk of intergranular corrosion that occurs in the high temperature range flagged by the Material Specification.   Decl., Ex. F.   Therefore, Applicant argues in the Arbitration that Baker Hughes Germany knew of the risk of intergranular corrosion, but chose to use AISI420mod anyway and without warning Applicant.   Documents that prove Respondent and/or Baker Hughes Germany's knowledge of the risk would negate Baker Hughes Germany's arguments that Applicant's calculated costs are excessive because they should be discounted to account for any "new for old" benefit.   Under German law, this argument may not be a defense where there was knowledge of the defect. *Id.* at ¶ 24.[8]

---

[8]    The applicable time period for most of Applicant's discovery requests is from 2008—the year that Applicant began contracting with Baker Hughes Germany—to the present. In the case of its third request concerning whether Baker Hughes and/or Baker Hughes Germany had prior knowledge of the defects, the applicable time period begins in 2002 because the Baker Hughes Material Specification for AISI420mod, indicating there are

*Communications between Baker Hughes and any insurance business concerning the ruptures in the two caverns, the serial defect in the SSSVs, and/or the Award.* Applicant believes that Baker Hughes has documents and communications transmitted between itself and insurance businesses that discuss the cause, consequences and costs of the ruptures and the serial defect in the SSSVs. Given that defective subsurface equipment, such as the SSSVs that Baker Hughes designed and manufactured, can lead to damages exceeding €1 billion, *see* Decl., ¶ 23, and that Baker Hughes "maintains a commercial general liability insurance,"[9] Applicant expects that Baker Hughes has corresponded with its insurance providers regarding potential liabilities arising from the ruptures and/or serial defects. Applicant also expects that Baker Hughes has corresponded with its insurance providers regarding potential liabilities arising from the Award, which held that the material used in the SSSVs rendered them defective and caused the ruptures. Documents that show Baker Hughes' assessment of its and/or Baker Hughes Germany's potential liabilities in the context of insurance coverage could support Applicant's calculation of the damages that Baker Hughes Germany owes under the Award, and refute Baker Hughes Germany's allegation that the Straddles sufficiently repair the defective SSSVs and discharge its obligations to compensate Applicant under the Award.

*Deposition testimony pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure.* Applicant seeks a deposition of a corporate representative of Respondent on the abovementioned topics as set forth in Exhibit B to the Harkness Declaration.[10]

---

risks associated with exposing AISI420mod to the temperatures that occur when welding, is dated September 17, 2002. *See* Decl., Ex. E.

[9]   Form 10-K, at 7.

[10]   Applicant reserves the right, following its review of the requested discovery, to seek up to two additional fact depositions in addition to the corporate representative deposition sought in its subpoena for testimony.

**ARGUMENT**

Applicant has satisfied all of Section 1782's statutory requirements, and all of the discretionary factors announced in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004) strongly favor granting the narrow and specific discovery requested.

Congress enacted Section 1782 to, *inter alia*, "facilitat[e] the conduct of litigation in foreign tribunals [and] improv[e] international cooperation in litigation." *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999).  Over time, Congress has "substantially broadened the scope of assistance federal courts could provide for foreign proceedings." *Intel*, 542 U.S. at 247-48; *see also In re Bayer AG*, 146 F.3d 188, 191 (3d Cir. 1998) ("[Through] amendments now incorporated in [Section] 1782, Congress liberalized many of the procedures for obtaining discovery for use in foreign litigation."); *Application Of Consorcio Ecuatoriano de Telecomunicactiones S.A. v. JAS Forwarding (USA) Inc.*, 747 F.3d. 1262, 1269 (11th Cir. 2014) ("Congress notably deleted the words 'in any judicial proceeding pending in any court in a foreign country' and replaced them with the words 'in a proceeding in a foreign or international tribunal' in order to ensure that assistance was not confined to proceedings before conventional courts.").  Today, Section 1782 allows a party to a foreign proceeding to seek a "broad range of discovery" so as to "assist foreign tribunals in obtaining relevant information that the tribunals may find useful." *Intel*, 542 U.S. at 259, 262.

The statute provides, in pertinent part, that:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made . . . upon the application of any interested person and may direct that

> the testimony or statement be given, or the document or other thing
> be produced, before a person appointed by the court.

28 U.S.C. § 1782. Thus, to satisfy the statutory requirements, a party need only demonstrate: (1) that the request is made by an "interested person," (2) for use in "proceedings before a foreign tribunal," and (3) that the person from whom discovery is sought "reside[s]" in the district of the court receiving the application. *Kulzer v. Esschem*, 390 F. App'x 88, 91 (3d Cir. 2010).

Once it is established that the statutory requirements are satisfied, this Court has the discretion to grant the Application subject to balancing four equitable factors articulated by the Supreme Court in *Intel*, namely: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding" and can be ordered to produce evidence by that tribunal; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;" (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions;" and (4) whether the request is otherwise "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264-65; *see also In re O'Keeffe*, 646 F. App'x 263, 266 (3d Cir. 2016).

This Court must exercise its discretion under Section 1782 in light of the twin aims of the statute: "providing efficient assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar assistance to our courts." *Intel*, 542 U.S. at 252; *see also In re Biomet Orthopaedics Switzerland GmBh*, 742 F. App'x 690, 696 (3d Cir. 2018). Consistent with those twin aims, the Third Circuit has broadly interpreted Section 1782 to permit US courts to grant "wide assistance" to parties in foreign proceedings. *See, e.g., John Deere Ltd. v. Sperry Corp.*, 754 F.2d 132, 135 (3d Cir. 1985) ("[Section 1782's] liberal intent to provide judicial assistance . . . has been acknowledged as a primary statutory goal since section 1782' s inception.").

## A.    The Application Meets The Statutory Requirements

Applicant is an "interested person" in a foreign proceeding—the Arbitration—and seeks

discovery for use in that foreign proceeding from a subject that "resides" in this District. *Kulzer*,

390 F. App'x at 91.  Accordingly, this Application meets the statutory requirements.

### 1.    Applicant Is An "Interested Person"

Applicant is a party in the Arbitration against Baker Hughes Germany.  *See* Decl. ¶ 9.

Thus, there is "no doubt" that Applicant qualifies as an "interested person" within the meaning of

Section 1782.  *See Intel*, 542 U.S. at 256 ("No doubt litigants are included among, and may be

the most common example of, the interested person.").

### 2.    The Evidence Is For Use In A Foreign Proceeding

Applicant seeks discovery for "use in a proceeding in a foreign or international tribunal."

28 U.S.C. § 1782; *see Intel*, 542 U.S. at 258 ("The term tribunal includes . . . arbitral tribunals

. . . ") (*quoting* Hans Smit, *Int'l Litig. Under The United States Code*, 65 Colum. L. Rev. 1015 at

1027, n.71 (1965)).   This Court, like many other district courts, has granted Section 1782

discovery for use in private international arbitrations, such as the Arbitration pending in

Germany between Applicant and Baker Hughes Germany.[11]   *See, e.g., Comisión Ejecutiva,*

---

[11]     In considering *Intel,* some district courts outside of this Circuit have applied a functional analysis to determine whether a private international arbitration is a "proceeding" within the meaning of Section 1782.  *See, e.g., In re Roz Trading Ltd.*, 469 F. Supp. 2d 1221, 1224-25 (N.D. Ga. 2006) (considering a private arbitration to be a "proceeding" under Section 1782 where the tribunal acts as a "'first-instance decisionmaker[] that issue[s] decisions 'both responsive to the complaint and reviewable in court.'") (quoting *Intel*, 542 U.S. at 255.).  However, this functional analysis misunderstands the issue at hand in *Intel*, namely, whether the Directorate-General for Competition of the European Commission was a quasi-adjudicatory or purely executive actor.  *See Intel*, 542 U.S. at 255, n.9.  The Court's decision in *Intel* did not suggest, much less require, that foreign proceedings meet certain functional requirements to come within Section 1782's ambit— indeed, it expressly declined to offer any categorical limitations.  *See id.* at 265.  In any event, the Arbitration at issue here would nonetheless meet such a functional analysis. As the rules governing the Arbitration show, DIS tribunals act as a first-instance

*Hidroeléctrica del Rio Lempa v. Nejapa Power Company, LLC*, 2008 WL 4809035, at *1 (D. Del. Oct. 14, 2008) ("[T]he Supreme Court's decision in *Intel* (and post-*Intel* decisions from other district courts) indicate that Section 1782 does indeed apply to private foreign arbitrations."), *vacated on other grounds*, 341 F. App'x 821 (3d Cir. 2009); *In re Children's Invest. Fund Found. (UK)*, 363 F. Supp. 3d 361, 369 (S.D.N.Y. 2019) ("[A] private arbitration tribunal is a 'proceeding in a foreign or international tribunal' for the purposes of [Section] 1782."); *In re Babcock Borsig AG*, 583 F. Supp. 2d 233, 238 (D. Mass. 2008) ("[T]he [*Intel*] Court's reasoning and dicta strongly indicate that [private arbitrations] also fall within the statute."); *In Re: Application of Stadtwerke Frankfurt Am Main Holding GmbH*, No. 19-mc-00001 (S.D. Ga. Feb. 27, 2019), Order, D.I. No. 3, at 2 (ordering Section 1782 discovery for use in a DIS arbitration); [12] *In re Application of Stadtwerke Frankfurt Am Main Holding GmbH*, No. 19-mc-00035(JMF) (S.D.N.Y. Jan. 31, 2019), Order, D.I. No. 8, at 1 (same).[13]

The discovery sought by this Application is "for use" in a foreign proceeding. To satisfy the "for use" requirement in this Circuit, "it is sufficient that the applicant intend to offer the

---

decision-makers, take evidence, and issue final awards in response to the parties' pleadings. *See* Decl., Ex. A, DIS Rules, Arts. 28-29, 39. And under German law, an award may be reviewed by German courts, which may set aside the award on statutorily enumerated grounds. ZIVILPROZESSORDNUNG [ZPO] [GERMAN PROCEDURAL CODE], § 1059, *translation at* https://www.gesetze-im-internet.de/englisch_zpo/englisch_zpo.html (Ger.).

[12] Pursuant to Local Rule 7.1.3(7), copies of the unreported decisions cited herein are attached in exhibits to the Harkness Declaration.

[13] The Fifth Circuit remains the lone circuit court to find, post-*Intel*, that an international arbitral tribunal does not meet the requirements of Section 1782, and its decision was based on the conclusion that *Intel* did not unequivocally meet the standard for overturning the controlling circuit court precedent in *Republic of Kazakhstan v. Biedermann Int'l*, 168 F.3d 880 (5th Cir. 1999). *See El Paso Corp. v. La Comision Ejecutiva Hidroelectrica Del Rio Lempa*, 341 F. App'x 31, 33-34 (5th Cir. 2009) ("Because we cannot overrule the decision of a prior panel unless such overruling is *unequivocally* directed by controlling Supreme Court precedent, we remain bound by our holding in [*Kazakhstan*].") (emphasis in original).

evidence to a foreign [proceeding]." *In re O'Keeffe*, 2015 U.S. Dist. LEXIS 16000, at *8 (D.N.J. Feb. 10, 2015); *see also In re the Application of Sauren Fonds-Select SICAV v. For Discovery Pursuant to 28 U.S.C. § 1782*, 2016 WL 6304438, at *4 (D.N.J. Oct. 26, 2016) ("[F]or use in a proceeding indicates something that will be employed with some advantage or serve some use in the proceeding.") (*quoting Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015)).  The documents need not be admissible or even discoverable in the foreign proceeding. *See Intel*, 542 U.S. at 260 ("[N]othing in the text of [Section] 1782 limits a district court's production-order authority to materials that could be discovered in the foreign jurisdiction if the materials were located there."); *Kulzer*, 390 F. App'x at 92 (same); *In re Application of Imanagement Servs. Ltd.*, 2006 WL 547949, at *3 (D.N.J. Mar. 3, 2006) ("[T]he Supreme Court's analysis supports the proposition that United States courts should have the discretion to offer discovery assistance to foreign tribunals independent of the laws of the foreign state").

Accordingly, the "for use" requirement is easily satisfied here because Applicant intends to use the requested discovery in the Arbitration to show what repairs are necessary to remedy the defect, the costs associated with those repairs, and that Baker Hughes Germany has no grounds to limit the amount of compensation it owes to Applicant under the Award. *See* Decl. ¶¶ 21-24.  These are core issues in the Arbitration, which is a "proceeding in a foreign or international tribunal." 28 U.S.C. § 1782.

3.    The Subject Of Discovery "Resides" In The District Of Delaware

Respondent is incorporated in the State of Delaware.  Accordingly, Respondent "resides" in this district for the purposes of Section 1782. *See In re Application of Gilead Pharmasset LLC*, 2015 WL 1903957, at *2 (D. Del. Apr. 14, 2015) ("[The discovery subject] is incorporated under the laws of Delaware, and is therefore within the jurisdictional reach of this court."); *see also In re Application of Reliance Flag*, Order, D.I. No. 5 at 1 (granting discovery in

consideration of, and incorporating by reference, applicant's contention that the discovery subject was incorporated under the laws of the State of Delaware); *In re Cal. State Teachers' Ret. Sys.*, 2016 U.S. Dist. LEXIS 179897, at *6 (D.N.J. Dec. 28, 2016) (finding statutory factors met and granting discovery where the subject of discovery was incorporated in the district).[14]

Thus, this Application meets all of the statutory prerequisites for Section 1782 discovery.

**B.    All Of The *Intel* Discretionary Factors Favor Granting This Application**

Each of the four discretionary factors articulated by the Supreme Court in *Intel*, 542 U.S. at 264-65, strongly weighs in favor of granting this Application.

1.    The Arbitral Tribunal May Not Compel Discovery From Respondent

The first *Intel* factor supports discovery because Respondent is not a party to the Arbitration and is not subject to the jurisdiction of a German arbitral tribunal.

The Supreme Court has observed that the need for Section 1782 discovery is "less apparent" when it is sought from a participant to the foreign proceeding because "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." *Intel*, 542 U.S. at 264. But where, as here, the party from whom discovery is sought is *not* a party to the foreign proceeding, the need for Section 1782 discovery is more apparent because the discovery sought may be beyond the foreign tribunal's reach. *See id.* ("[N]onparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United Sates, may be unobtainable absent [Section] 1782(a) aid."); *In re the Application of Sauren Fonds-Select SICAV*, 2016 WL 6304438, at *5

---

14    The physical location of the discovery sought is not relevant to a determination of whether the Application meets Section 1782's statutory requirements. *See In re Application of Gemeinschaftspraxis Dr. Med Schottdorf*, 2006 WL 3844464, at *5 (S.D.N.Y. Dec. 29, 2006) ("Section 1782 requires only that the party from whom discovery is sought be 'found' here; not that the documents be found here.").

("[T]he appropriate inquiry on this factor is . . . whether the *entity from which discovery is sought is within the [foreign tribunal's] reach*.") (emphasis in original).

In the light of that Supreme Court guidance, courts grant Section 1782 discovery where, as here, the foreign tribunal has no definite means to compel discovery directly from a non-party to the foreign proceeding. *See In re Chevron Corp.*, 633 F.3d at 162 (affirming grant of discovery and finding first *Intel* factor weighed in favor of discovery where it was unlikely that either the foreign court or the foreign arbitral tribunal could compel production of documents); *Kulzer*, 390 F. App'x at 92 (ordering discovery where discovery subject was a non-party and noting that "German procedure does not offer a mechanism" for obtaining the discovery sought from a non-party). This is so even where there is some corporate relationship between the party to the foreign proceeding and the entity from which Section 1782 discovery is sought. *See In re the Application of Sauren Fonds-Select SICAV*, 2016 WL 6304438, at *5 (first *Intel* factor weighed in favor of granting Section 1782 discovery from US parent of a party to a German proceeding); *In re Cal. State Teachers' Ret. Sys.*, 2017 WL 1246349, at *6 (D.N.J. Apr. 3, 2017) (affirming magistrate order granting discovery from the US subsidiary of a party to a German proceeding).

Respondent is not a party to the Arbitration and thus does not fall within the jurisdiction of the arbitral tribunal. Decl. ¶ 32. Moreover, arbitral tribunals lack the subpoena power of this Court, and thus are not able to make an order directly against non-parties (such as Respondent) compelling them by force of law to render the discovery ordered. *Id.* Indeed, this was the basis on which Baker Hughes Germany repeatedly refused to produce numerous relevant documents in the first arbitration between itself and Applicant. *Id.* Thus, Applicant cannot obtain discovery from Respondent through the Arbitration.

2.     The Arbitral Tribunal Is Not Hostile To This Application

The second *Intel* factor supports discovery because courts should find in favor of discovery absent proof that the foreign tribunal would be offended by the introduction of evidence obtained pursuant to Section 1782.   *See In re Chevron Corp.*, 633 F.3d at 162 (affirming grant of Section 1782 discovery and stating "relevant evidence is presumptively discoverable" absent a showing that such discovery would be an "offense to the foreign jurisdiction"); *In re Biomet Orthopaedics Switzerland GmBh*, 742 F. App'x at 698 (same); *In re Klein-Bentsur*, 2019 U.S. Dist. LEXIS 25472, at *10 (D.N.J. Feb. 15, 2019) (second *Intel* factor favored discovery where nothing in the record indicated that the foreign tribunal would be "unreceptive" to the evidence sought under Section 1782); *Pinchuk v. Chemstar Products LLC*, 2014 WL 2990416, at *3 (D. Del. Jun. 26, 2014) (second *Intel* factor favored granting discovery where  "no ruling has been made regarding the scope of discovery.").[15]

Here, there is no evidence to suggest that Applicant's requested discovery would not be accepted by the arbitral tribunal, much less that the tribunal would be offended by Applicant's submission of evidence obtained pursuant to Section 1782.  To the contrary, there is every reason to believe that the tribunal in the Arbitration will benefit from and appreciate the Court's assistance.  The discovery sought by this Application is not prohibited by either the DIS Rules or German law.  Decl. ¶ 33.  Accordingly, there is no law, rule of evidence, or rule of procedure in German proceedings that prohibits Applicant from filing this Application or from seeking and obtaining the discovery requested and using it in the Arbitration.  *Id.*  Indeed, courts in this

---

[15]     *See also Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995) ("[T]he district court's inquiry into discoverability . . . should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782."); *In re Gushlak*, 2011 WL 3651268, at *4 (E.D.N.Y. Aug. 17, 2011) ("[C]ourts should err on the side of ordering discovery, since foreign courts can easily disregard material they do not wish to consider.").

Circuit have granted requests for Section 1782 discovery specifically in the context of proceedings in Germany. *See, e.g., Kulzer*, 390 F. App'x at 92 (remanding with instructions to grant discovery for use in German proceeding, noting "the German court does not restrict receipt of the evidence sought"); *In re Cal. State Teachers' Ret. Sys.*, 2017 WL 1246349, at *4 (affirming magistrate order granting discovery and stating "the Court finds that German courts often welcome evidence from [Section] 1782 applications").

### 3. The Application Has Not Been Filed To Circumvent Any Law Or Rule

The third *Intel* factor supports discovery because Applicant brings this Application in good faith and does not seek to "circumvent [German] proof-gathering restrictions" or other policies. *Intel*, 542 U.S. at 265. German law, which governs the dispute between Applicant and the Baker Hughes Germany, does not prohibit Applicant from seeking the assistance of US courts in collecting evidence. Decl. ¶ 33; *see also In re Varian Med. Sys. Int'l AG*, 2016 U.S. Dist. LEXIS 38911, at *13 (N.D. Cal. Mar. 24, 2016) ("[Applicant] is unaware of any restrictions imposed by German courts in proof-gathering procedures that would prohibit it from obtaining and introducing the discovery it seeks through Section 1782."); *In re IPCom*, 2014 WL 12772090, at *3 ("U.S. courts have routinely granted applications under Section 1782 for discovery of evidence to be used in German proceedings.").

There have not yet been any rulings on discovery in the Arbitration. Decl. ¶ 11. Where, as here, the record is clear of any indication that a Section 1782 application has been brought to circumvent a law or rule of the foreign country or tribunal, the third *Intel* factor weighs in favor of discovery. *See In re Klein-Bentsur*, 2019 U.S. Dist. LEXIS 25472, at *11 (finding third *Intel* factor weighed in favor of granting discovery where "Petitioner represents that the discovery sought in this application does not, to Petitioner's knowledge, violate any restrictions under Israeli law on evidence gathering.") (quotations omitted); *In re Ex Parte Motorola Mobility,*

*LLC*, 2012 WL 4936609, at *2 (N.D. Cal. Oct. 17, 2012) ("Because there is no indication in the record of an attempt to subvert a foreign tribunal's restrictions, the court finds that this factor weighs in favor of [the applicant].").

    4.    <u>The Discovery Requests Are Not Unduly Intrusive Or Burdensome</u>

The fourth *Intel* factor supports discovery because the discovery sought is narrowly tailored and modest in scope, and thus is not "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. Applicant seeks only four categories of document discovery and a Rule 30(b)(6) deposition on topics that are directly relevant to Applicant's claims in the Arbitration because they concern the repairs to remedy the defective SSSVs, the costs associated with those repairs, and whether Baker Hughes Germany has grounds to limit the amount of compensation it owes to Applicant under the Award. *See* Decl. ¶ 26; *see also In re Cal. State Teachers' Ret. Sys.*, 2017 WL 1246349, at *5 (finding documents sought from US subsidiary of foreign party that marketed and sold product at issue "highly relevant").

Thus, all four of the *Intel* factors strongly favor the Court exercising its discretion to grant this Application.

**C.    This Court Can And Should Order Respondent To Preserve Evidence Pending Compliance With An Order Pursuant To Section 1782**

In tandem with a grant of Section 1782 discovery, courts also routinely order preservation of relevant documents. *See, e.g., Pinchuk*, 2014 WL 2990416, at *1 (incorporating by reference unreported order granting *ex parte* Section 1782 application and ordering the discovery subjects to "preserve documents and evidence, electronic or otherwise."); *In re Eurasian Natural Resources Corp.*, 2018 WL 1557167, at *5 (N.D. Cal. Mar. 30, 2018) (granting Section 1782 application and ordering preservation of documents); *In re Machida*, 2015 WL 12830388, at *2 (C.D. Cal. Nov. 3, 2015) (same). Applicant requests that the Court do so here.

## CONCLUSION

For the foregoing reasons, Applicant respectfully requests that this Court (i) grant this Application, pursuant to 28 U.S.C. § 1782, with respect to the discovery identified in Exhibit A and Exhibit B to the Harkness Declaration, (ii) order Respondent to produce the discovery within thirty days of service of the subpoenas, (iii) direct Respondent to preserve relevant documents in its possession, custody or control, and (iv) grant such other and further relief as the Court deems just and proper.

Dated: August 29, 2019

LANDIS RATH & COBB LLP

Rebecca L. Butcher (No. 3816)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, DE 19801
Telephone: (302) 467-4400
Facsimile:  (302) 467-4450
Email: butcher@lrclaw.com
          pierce@lrclaw.com

*and*

FRESHFIELDS BRUCKHAUS DERINGER US LLP
Timothy P. Harkness
Olivia P. Greene
601 Lexington Avenue, 31st Floor
New York, New York 10022
Telephone: (212) 277-4000
Facsimile: (212) 277-4001
Email: timothy.harkness@freshfields.com
          olivia.greene@freshfields.com
*Pro Hac Vice Applications Forthcoming*

*Attorneys for Applicant Storag Etzel GmbH*

W0057435

20