**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

In re:

Application of Storag Etzel GmbH for an Order, Pursuant to 28 U.S.C. § 1782, to Obtain Discovery for Use in a Foreign Proceeding

**Case No.: 19-mc-00209-CFC**

Redacted Document Filed January 16, 2020
Sealed Document Filed January 9, 2020 (DI 33)

**STORAG ETZEL GMBH'S REPLY**
**IN FURTHER SUPPORT OF ITS APPLICATION**

**LANDIS RATH & COBB LLP**
Rebecca L. Butcher (No. 3816)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, DE 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email: butcher@lrclaw.com
pierce@lrclaw.com

**FRESHFIELDS BRUCKHAUS DERINGER US LLP**
Timothy P. Harkness
Olivia P. Greene
601 Lexington Avenue, 31st Floor
New York, New York 10022
Telephone: (212) 277-4000
Facsimile: (212) 277-4001
Email: timothy.harkness@freshfields.com
olivia.greene@freshfields.com

Dated: January 9, 2020

## TABLE OF CONTENTS

ARGUMENT ..... 1

I. The Application Meets All Statutory Criteria Because Private Arbitrations Satisfy Section 1782 ..... 1

II. The *Intel* Discretionary Factors Weigh In Favor Of The Application ..... 5

A. The Tribunal Is Receptive To Section 1782 Discovery And Storag's Application Does Not Circumvent Any Foreign Discovery Procedures Or Rules ..... 6

B. Storag's Discovery Requests Are Not Overly Burdensome And Are Directly Relevant To The Core Issues ..... 8

III. Baker Hughes' Request For A Stay Is Moot ..... 10

CONCLUSION ..... 10

**TABLE OF AUTHORITIES**

**Cases** **Page(s)**

*Abdul Latif Jameel Trans. Co. Ltd. v. FedEx Corp.*,
939 F.3d 710 (6th Cir. 2019) ....................2, 3

*Comision Ejecutiva Hidroelectrica del Rio Lempa v. Nejapa Power Co.*,
2008 WL 4809035 (D. Del. Oct. 14, 2008) ....................4

*Consorcio Ecuatoriano de Telecommunicaciones S.A. v. JAS Forwarding (USA) Inc.*,
685 F.3d 987 (11th Cir. 2012) ....................3

*El Paso Corp. v. La Comision Ejecutiva Hidroelectrica Del Rio Lempa,*
341 F. App'x 31, 34 (5th Cir. 2009) ....................4

*Eyre-Shoemaker, Inc, v. Buffalo, R & P R Co*,
193 F. 387 (3d Cir. 1912)....................2

*In re Biomet Orthopaedics Switzerland GmBh*,
742 F. App'x 690 (3d Cir. 2018) ....................6, 8, 10

*In re Broadsheet LLC*,
2011 WL 4949864 (D. Colo. Oct. 18, 2011) ....................3

*In re CA Investment (Brazil) S.A.*,
2019 WL 1531268, (D. Minn. Apr. 9, 2019)....................3

*In re Chevron Corp.*,
633 F.3d 153 (3d Cir. 2011)....................5, 6, 8

*In re. Children's Investment Fund Foundation (UK)*,
363 F. Supp. 3d 361 (S.D.N.Y. 2019)....................3

*In re China Petrochemical Dev. Corp.*,
2017 WL 10841339 (D. Conn. Nov. 28, 2017) ....................4

*In re CMPC Celulose Riograndense LTDA.*,
2019 WL 2995950 (D.R.I. July 9, 2019) ....................3

*In re Gilead Pharmasset LLC*,
2015 WL 1903957 (D. Del. Apr. 14, 2015)....................7

*In re Kleimar N.V v. Benxi Iron & Steel Am., Ltd.*,
2017 WL 3386115 (N.D. Ill. Aug. 7, 2017) ....................3

*In re Kreke Immobilien KG*,
2013 WL 5966916 (S.D.N.Y. Nov. 8, 2013)....................7

*In re MoneyOnMobile, Inc.*,
2019 WL 2515612, (N.D. Cal. June 18, 2019)....................3

*In re O'Keeffe*,
646 F. App'x 263 (3d Cir. 2016) ....................9

*In re Operadora DB Mexico, S.A. de C.V.*,
2009 WL 2423138 (M.D. Fla. Aug. 4, 2009) ....................5

*In re Owl Shipping, LLC*,
2014 WL 5320192 (D.N.J. Oct. 17, 2014)....................3, 4

*In re Pola Mar. Ltd. For order pursuant to 28 U.S.C. §1782 to conduct discovery for use in foreign proceedings*,
2018 WL 1787181, at *2 (S.D. Ga. Apr. 13, 2018)....................3

*In re Roz Trading Ltd.*,
469 F. Supp. 2d 1221 (N.D. Ga. 2006) ....................3

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004).................... *passim*

*Morissette v. United States*,
342 U.S. 246 (1952)....................2

*Nat'l Broad. Co. v. Bear Stearns & Co.*,
165 F.3d 184 (2d Cir. 1999)....................2, 3, 4

*Republic of Kazakhstan v. Biedermann Int'l*,
168 F.3d 880 (5th Cir. 1999) ....................2, 3, 4

*United States v. Ron Pair Enters., Inc.*,
489 U.S. 235 (1989)....................1

**Statutes**

*28 U.S.C. § 1782* .................... *passim*

**Rules**

D. Del., Default Standard for Discovery, Including Discovery of Electronically Stored Information ("ESI"), ¶ 1(d)....................9

Fed. R. Civ. P. 26(b)(1) ........ 8

**Other Authorities**

[REDACTED] ........ 8, 10

GARY BORN, INTERNATIONAL COMMERCIAL ARBITRATION (2d. ed. 2014) ........ 4

JOSEFA SICARD-MIRABEL & YVES DERAINS, INTRODUCTION TO INVESTOR-STATE ARBITRATION (2018) ........ 5

[REDACTED]) ........ 4

RESTATEMENT OF INTERNATIONAL COMMERCIAL AND INVESTOR-STATE ARBITRATION (AM. LAW. INST., Proposed Final Draft, 2019) ........ 4

2 JOSEPH STORY, COMMENTARIES ON EQUITY JURISPRUDENCE (9th ed. 1866) ........ 2

Baker Hughes' Memorandum in Opposition (D.I. 18) ("Opposition" or "Opp.") neither challenges the relevance of the limited discovery Storag seeks, nor coherently explains why that discovery would be an undue burden or otherwise unwarranted.[1] With regard to the core issues in the Section 1782 context, the substance of the Opposition falls short of demonstrating the Application does not satisfy the statutory requirements or the discretionary factors set forth in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004). Instead, Baker Hughes attempts to shift the Court's attention to extraneous arguments about proceedings that are not the subject of Storag's Application.[2] Baker Hughes' alternative argument for a stay has been rendered moot [REDACTED] In fact, the Tribunal [REDACTED] [REDACTED] Because Storag's Application meets the statutory requirements and the discretionary factors favor discovery, the Application should be granted so that discovery may begin promptly and in time for Storag to use the discovery [REDACTED]

**ARGUMENT**

**I. The Application Meets All Statutory Criteria Because Private Arbitrations Satisfy Section 1782**

Baker Hughes' argument [REDACTED] is not "a proceeding in a foreign or international tribunal," 28 U.S.C. § 1782(a), misses the fundamental point of statutory interpretation: the inquiry begins "with the language of the statute itself." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989); *Intel*, 542 U.S. at 255. "Tribunal" is a term of art that has "accumulated the legal tradition and meaning of centuries of practice." *Morissette v.*

---

[1] Capitalized terms not defined herein have the meaning ascribed to them in Storag's Memorandum in Support of Its Application (D.I. 3).

[2] Baker Hughes tries to confuse matters with irrelevant assertions, for instance concerning a [REDACTED] to which Storag is not party, which are rebutted in the Supplemental Declaration ("Supp. Decl.") ¶¶ 8, 10-13, filed herewith. None of these statements changes the conclusion that Storag is entitled to the discovery it seeks.

*United States*, 342 U.S. 246, 250 (1952) (courts assume Congress intended to adopt the customary meaning of terms of art). "Tribunal" has been used by American courts "to describe private, contracted-for commercial arbitrations for many years before Congress added the relevant language to § 1782(a) in 1964." *Abdul Latif Jameel Trans. Co. Ltd. v. FedEx Corp.*, 939 F.3d 710, 721 (6th Cir. 2019) (surveying cases).[3]

The most recent federal circuit court decision to consider the meaning of "tribunal" in Section 1782, decided just a few months ago, held that "the text, context, and structure of § 1782(a) provide no reason to doubt that the word tribunal includes private commercial arbitral panels." *Id.* at 723. Baker Hughes ignores this opinion and fails to explain why the ordinary meaning of "tribunal" in American jurisprudence does not apply to Section 1782. Instead, Baker Hughes urges this Court to rely on two widely contested out-of-circuit pre-*Intel* cases that argue legislative history supports a narrow interpretation of "tribunal." *See Nat'l Broad. Co. v. Bear Stearns & Co.*, 165 F.3d 184, 189-90 (2d Cir. 1999) ("*NBC*"); *Republic of Kazakhstan v. Biedermann Int'l*, 168 F.3d 880, 882-83 (5th Cir. 1999) ("*Kazakhstan*"). *Intel* undermines these decisions. To be sure, in reviewing Section 1782's legislative history, the Supreme Court reasoned that the use of "tribunal" was intended to *broaden* Section 1782 and "ensure that assistance is not confined to proceedings before conventional courts, but extends also to administrative and quasi-judicial proceedings." *Intel*, 542 U.S. at 249 (citations omitted) (in amending Section 1782 Congress deleted the phase "any judicial proceeding pending in any court in a foreign country" and replaced it with the phrase "a proceeding in a foreign or

[3] Indeed, for over 150 years, private arbitrations have been considered "tribunals" in common law jurisprudence. *See* 2 JOSEPH STORY, COMMENTARIES ON EQUITY JURISPRUDENCE § 686 (9th ed. 1866). Courts, including those in this Circuit, have long referred to private arbitrations as "tribunals." *See, e.g.*, *Eyre-Shoemaker, Inc, v. Buffalo, R & P R Co*, 193 F. 387, 389 (3d Cir. 1912) (referring to a contracted-for arbitration forum between private parties as a "tribunal").

international tribunal"). *Intel*'s interpretation of the legislative history "contradicts the interpretations and applications of [*NBC* and *Kazakhstan*], which incorrectly concluded that Congress intended to limit the availability of judicial assistance under § 1782 to governmental . . . proceedings." *In re Roz Trading Ltd.*, 469 F. Supp. 2d 1221, 1227 (N.D. Ga. 2006). Further, the Supreme Court expressly declined to adopt "categorial limitations" on the scope of Section 1782. *Intel*, 542 U.S. at 255. Thus, the Supreme Court's analysis logically leads to the conclusion that private arbitrations are "tribunals" under Section 1782.

Notably, the only new circuit courts to consider the issue post-*Intel*—the Sixth and Eleventh—both concluded that private arbitrations satisfy Section 1782. *See Abdul Latif Jameel Trans.*, 939 F.3d at 723 ("Our holding [that a private arbitration satisfies Section 1782] finds support also in *Intel.*"); *Consorcio Ecuatoriano de Telecommunicaciones S.A. v. JAS Forwarding (USA) Inc.*, 685 F.3d 987, 997-98 (11th Cir. 2012) (private arbitral tribunal satisfies Section 1782), *vacated on other grounds*, 747 F.3d 1262 (11th Cir. 2014). Courts in *nine* circuits—including the Third Circuit—have found that private arbitrations satisfy Section 1782.[4] In contrast, the cases Baker Hughes identifies in its favor are limited to five circuits, two of which—the Second and Fifth—are constrained by pre-*Intel* precedent.[5] *See* Opp. at 8, n.6.

---

[4] *See, e.g.*, *In re CMPC Celulose Riograndense LTDA.*, 2019 WL 2995950 (D.R.I. July 9, 2019) (First); *In re. Children's Investment Fund Foundation (UK)*, 363 F. Supp. 3d 361 (S.D.N.Y. 2019) (Second); *In re Owl Shipping, LLC*, 2014 WL 5320192 (D.N.J. Oct. 17, 2014) (Third); *Abdul Latif Jameel Trans.*, 939 F.3d 710 (Sixth); *In re Kleimar N.V v. Benxi Iron & Steel Am., Ltd.*, 2017 WL 3386115 (N.D. Ill. Aug. 7, 2017) (Seventh); *In re CA Inv. (Brazil) S.A.*, 2019 WL 1531268 (D. Minn. Apr. 9, 2019) (Eighth); *In re MoneyOnMobile, Inc.*, 2019 WL 2515612 (N.D. Cal. June 18, 2019) (Ninth); *In re Broadsheet LLC*, 2011 WL 4949864 (D. Colo. Oct. 18, 2011) (Tenth); *In re Pola Mar. Ltd. for order pursuant to 28 U.S.C. §1782 to conduct discovery for use in foreign proceedings*, 2018 WL 1787181 (S.D. Ga. Apr. 13, 2018) (Eleventh).

[5] Baker Hughes cites several Second and Fifth Circuit cases that qualify their rulings on the fact that they are bound by circuit precedent. *See, e.g.*, *El Paso Corp. v. La Comision Ejecutiva Hidroelectrica Del Rio Lempa*, 341 F. App'x 31, 34 (5th Cir. 2009) ("Because we cannot overrule the decision of a prior panel unless such overruling is unequivocally directed by

Importantly, Baker Hughes has not identified a single Third Circuit case in its favor. However, Third Circuit district courts, including in this Court, have concluded that private arbitrations satisfy Section 1782. *See Comision Ejecutiva Hidroelectrica del Rio Lempa v. Nejapa Power Co.*, 2008 WL 4809035, at *1 (D. Del. Oct. 14, 2008) ("*Intel* (and post-*Intel* decisions from other district courts) indicate that Section 1782 does indeed apply to private foreign arbitrations."), *vacated on other grounds*, 341 F. App'x 821 (3d Cir. 2009); *In re Owl Shipping, LLC*, 2014 WL 5320192, at *3 (private arbitration tribunal "constitutes a foreign tribunal under § 1782").

Commentators (including from the law firm representing [redacted] agree that private arbitrations satisfy Section 1782. *See, e.g.*, RESTATEMENT OF INTERNATIONAL COMMERCIAL AND INVESTOR-STATE ARBITRATION § 3.5 note b (AM. LAW. INST., Proposed Final Draft, 2019) ("The Restatement takes the position that the plain language of § 1782 should prevail and that the statute should be interpreted as applying to all arbitral tribunals.").[6] Despite Baker Hughes' current argument to the contrary, this view has even been confirmed by declarant [redacted] counsel for [redacted] *See* [redacted] ("[T]he better view is that § 1782 should extend to foreign arbitral proceedings, in light of the language and history of § 1782, the Supreme Court's expansive view of this statute, and public policy concerns.").

---

controlling Supreme Court precedent, we remain bound by our holding in [*Kazakhstan*].") (citations omitted); *In re China Petrochemical Dev. Corp.*, 2017 WL 10841339, at *3 (D. Conn. Nov. 28, 2017) ("[T]he Second Circuit's decision in *NBC* is still good law and . . . it governs the issue of the availability of section 1782 in the present case."). This Court is not so bound.

[6] *See also* GARY BORN, INTERNATIONAL COMMERCIAL ARBITRATION 2410 (2014) ("The plain language of § 1782 would certainly indicate that the provision extends to arbitral 'tribunal[s].'").

Baker Hughes' alternative argument that a [REDACTED] does not satisfy Section 1782 misconstrues *Intel*, which does not stand for a judicial review pre-requisite. *See* Memorandum in Support of the Application (D.I. 3) ("App.") at 12-13, n.11. In any event, awards issued by [REDACTED] are subject to certain judicial review under German law. *See id.* And district courts have ordered discovery in aid of [REDACTED] *See id.* at 13. Baker Hughes suggests that [REDACTED] is "*completely* private," Opp. at 11, and argues this is somehow determinative, but it does not explain why this is sufficient to overcome the plain meaning of "tribunal" or how a [REDACTED] differs from other arbitrations.[7] The case Baker Hughes cites merely offers policy rationales for excluding private arbitrations from Section 1782's ambit. *See In re Operadora DB Mexico, S.A. de C.V.*, 2009 WL 2423138, at *11 (M.D. Fla. Aug. 4, 2009) ("The parties selected the ICC Court as an alternative to governmental or state-sponsored proceedings.").

Thus, the weight of authority—particularly, the plain meaning of "tribunal" and Supreme Court precedent—is clearly in favor of finding that a private international arbitration, such as [REDACTED] here, is a "proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a).

**II.The *Intel* Discretionary Factors Weigh In Favor Of The Application**

Baker Hughes does not contest that the first *Intel* factor favors discovery, *see* Opp. at 12, it has failed to rebut Storag's arguments on the other *Intel* factors, and its argument on the "twin aims" of Section 1782 does not shift any of the discretionary factors in its favor. *Intel*, 245 U.S. at 252. Thus, the discretionary factors all weigh in favor of granting the Application.

---

[7] For instance, the extent to which [REDACTED] are subject to judicial review does not distinguish [REDACTED] from other arbitrations. Arbitrations constituted pursuant to bi-lateral investment treaties are "unquestionably" within the scope of Section 1782, *In re Chevron Corp.*, 633 F.3d 153, 161 (3d Cir. 2011), and the awards of these arbitrations are also generally not subject to appeal on the merits. *See* JOSEFA SICARD-MIRABEL & YVES DERAINS, INTRODUCTION TO INVESTOR-STATE ARBITRATION 245 (2018).

**A. The Tribunal Is Receptive To Section 1782 Discovery And Storag's Application Does Not Circumvent Any Foreign Discovery Procedures Or Rules**

The second and third *Intel* factors favor discovery because Baker Hughes has not met its burden to show that [REDACTED] *See In re Biomet Orthopaedics Switzerland GmBh*, 742 F. App'x 690, 697-98 (3d Cir. 2018) (burden of proof is on respondent under the second *Intel* factor); *In re Chevron Corp.*, 633 F.3d at 163 (burden of proof is on respondent under the third *Intel* factor).

After Storag brought its Application, [REDACTED] *See* Supp. Decl., Ex. G at 3 (hereinafter, "Proc. Or."). [REDACTED][8] Proc. Or. at 6; *see also id.* at 5 [REDACTED], in stark contradiction to the crux of Baker Hughes' arguments on the second *Intel* factor. *Id.* at 6. Moreover, [REDACTED] *Id.* at 5. [REDACTED] strongly supports Storag's position that discovery is warranted here because it confirms

[8] [REDACTED] Supp. Decl. ¶ 6.

that the Application is consistent with the rules of the foreign proceeding and does not pre-empt an unfavorable decision in the foreign proceeding. *See id.* at 5-6.

Furthermore, not one of the assertions Baker Hughes makes with respect to the second and third *Intel* factors holds water. First, the [REDACTED] do not regulate or constrain a party's ability to obtain evidence from a third party [REDACTED] hence, [REDACTED] *See* Proc. Or. at 5. Second, [REDACTED] *See id.* at 6. [REDACTED] *Id.* Third, despite its claims that Storag's Application is "an attempt to circumvent foreign proof-gathering restrictions," Baker Hughes fails to identify any rule or decision that Storag ostensibly circumvents. *See* Opp. at 14-15. Last, the cases Baker Hughes cites in arguing Storag "rushed" to file its Application in order to avoid "an unfavorable decision from a foreign tribunal," Opp. at 15, are distinguishable and inapplicable here. In both cases, the foreign tribunal had jurisdiction over the respondent to the Section 1782 proceeding and this fact was central to each court's analysis of the third *Intel* factor. *See In re Kreke Immobilien KG*, 2013 WL 5966916, at *6 (S.D.N.Y. Nov. 8, 2013) (respondent within the jurisdictional reach of foreign tribunal); *In re Gilead Pharmasset LLC*, 2015 WL 1903957, at *4 (D. Del. Apr. 14, 2015) (respondent was also applicant's counterparty in the foreign proceeding). Here, Baker Hughes is [REDACTED] *See* App. at 16.

Where, as here, [REDACTED] the second and third *Intel* factors clearly favor discovery.

Because Baker Hughes does not offer any countervailing evidence, it has failed to meet its burden of proof under these two *Intel* factors.[9] *See In re Biomet*, 742 F. App'x at 698, n.9 (vacating and remanding decision denying discovery after finding the respondent "presented no evidence of offense" to the foreign tribunal); *In re Chevron Corp.*, 633 F.3d at 163 (affirming decision granting discovery after finding the respondent did not provide "definitive" evidence that the 1782 application was "an attempt to circumvent foreign proof-gathering restrictions.").

**B. Storag's Discovery Requests Are Not Overly Burdensome And Are Directly Relevant To The Core Issues**



Baker Hughes does not deny that it holds documents that and responsive to Storag's discovery requests here. *See* Opp. at 15-17. Storag's Application clearly sets forth Storag's need for the requested discovery. *See* App. at 7-9; Declaration (D.I. 5) ("Decl.") ¶¶ 19-31; *see also* Supp. Decl. ¶¶ 14-17. Baker Hughes fails to specifically explain why any of Storag's requests are "not in proportion to the needs of the case" or would present "burden . . . [that] outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1); *In re Biomet*, 742 F. App'x at 699 ("A specific showing of burden is commonly required . . . [for] objections to the scope of discovery."). Storag's subpoenas only request four categories of documents and a deposition on highly specific topics concerning the *See* App. at 7-9. As recently as September 2019, Baker Hughes has cited Baker Hughes has offered no explanation for why it lacks the resources

---

[9] Baker Hughes' argument that the discovery is counter to the "twin aim" of providing efficient assistance to parties in international proceedings, *see* Opp. at 18, is equally meritless.



or the ability to comply with such limited discovery requests, which pertain to issues it regularly [redacted]

Baker Hughes argues that Storag's first and third requests pertain to issues "already litigated in the [redacted]." Opp. at 16. This misstates the record and is immaterial to whether the discovery requests seek information relevant to Storag's claims [redacted][10] *See* Supp. Decl. ¶¶ 8, 10-11. Further, Baker Hughes as a non-party did not produce discovery in the [redacted], so the discovery that took place in that proceeding provides no basis to claim an undue burden here. *See* Declaration of Andrew Zeve (D.I. 20) ¶ 10; Decl. ¶ 32. Baker Hughes' opposition to Storag's second request also misses the mark. Whether or not the [redacted] is disputed [redacted], a point that Baker Hughes does not contest. *See* App. at 7-8; Supp. Decl. ¶ 9. With respect to Storag's fourth request, information concerning [redacted] assessment of its potential liabilities arising from the [redacted] is relevant to [redacted] *See* App. at 9. To the extent this request contains privileged information, the parties can meet and confer over an appropriate method to screen for privilege. *See* D. Del., Default Standard for Discovery, Including Discovery of Electronically Stored Information ("ESI"), ¶ 1(d).

Last, Storag has requested a deposition on four topics narrowly tailored [redacted] and potentially of great benefit to its case. *See* Application at 7-9. Baker Hughes' conclusory statement that a deposition would be "unduly intrusive and burdensome," Opp. at 17,

[10] To the extent Baker Hughes argues that this Court should determine whether any of Storag's claims in [redacted] are barred by preclusion principles because they were litigated in the [redacted] this kind of foreign law analysis is inappropriate in the 1782 context. *See, e.g.*, *In re O'Keeffe*, 646 F. App'x 263, 267 (3d Cir. 2016) ("[W]e do not read the statute to condone speculative forays into legal territories unfamiliar to federal judges . . . [which] cannot possibly promote the "twin aims" of the statute.") (citations omitted).

falls short of showing the burden it would incur—as a large multinational corporation—outweighs Storag's need for the discovery. *See* [REDACTED]. The fact that depositions were not taken in the [REDACTED] and are not addressed in the [REDACTED] is of no consequence—Section 1782 does not have a foreign discoverability requirement. *See* App. at 14. Accordingly, Baker Hughes has not demonstrated that responding to any of the discovery requests would be unduly burdensome, nor does it dispute it holds information relevant to [REDACTED] Therefore, the fourth *Intel* factor also weighs in favor of Storag's Application.[11]

**III. Baker Hughes' Request For A Stay Is Moot**



Baker Hughes' argument for a stay is premised on its incorrect assertion that Storag was required to [REDACTED] *See* Opp. at 18-19. However, the [REDACTED] *See* Proc. Or. at 6. Moreover, the [REDACTED] *See id.* Accordingly, Baker Hughes' request for a stay [REDACTED] Opp. at 19, is clearly moot. Because Baker Hughes offers no other basis for a stay, Storag respectfully submits that further briefing on this issue is unwarranted.

**CONCLUSION**

For the foregoing reasons, Storag respectfully requests that the Court grant its Application for discovery pursuant to 28 U.S.C. § 1782.

---

[11] To the extent this Court has reservations regarding specific discovery requests, Third Circuit precedent holds that such concerns are properly addressed in the meet and confer process rather than by denying a request outright. *See In re Biomet*, 742 F. App'x at 699 ("[I]t was erroneous to turn down [the applicant's] discovery requests flat without requiring [the respondent] to negotiate with [the applicant] over cutting down the request.") (citations omitted).

Dated: January 9, 2020

LANDIS RATH & COBB LLP

*/s/ Rebecca L. Butcher*
Rebecca L. Butcher (No. 3816)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, DE 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email: butcher@lrclaw.com
pierce@lrclaw.com

*And*

FRESHFIELDS BRUCKHAUS DERINGER US LLP
Timothy P. Harkness (admitted *pro hac vice*)
Olivia P. Greene (admitted *pro hac vice*)
601 Lexington Avenue, 31st Floor
New York, New York 10022
Telephone: (212) 277-4000
Facsimile: (212) 277-4001
Email: timothy.harkness@freshfields.com
olivia.greene@freshfields.com

*Attorneys for Applicant Storag Etzel GmbH*

**CERTIFICATE OF SERVICE**

I, Rebecca L. Butcher, Esquire hereby certify that on January 9, 2020, a true and correct copy of the foregoing *Storag Etzel GmbH's Reply in Further Support of Its Application* was caused to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to the following counsel of record:

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Respondent Baker Hughes, a GE Company, LLC*

I further certify that on January 9, 2020**,** I caused the foregoing document to be served via electronic mail upon the above-listed counsel.

Dated: January 9, 2020

LANDIS RATH & COBB LLP

*/s/ Rebecca L. Butcher*
Rebecca L. Butcher (No. 3816)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, DE 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email: butcher@lrclaw.com
pierce@lrclaw.com

*Attorneys for Applicant Storag Etzel GmbH*